STATE OF CONNECTICUT *v.* LOUIS F. COFONE

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 9—decided December 6, 1972

*Herbert J. Bundock,* public defender, for the appellant (defendant).

*Joseph T. Gormley, Jr.,* state's attorney, for the appellee (state).

HOUSE, C. J. This is an appeal from a judgment of the Superior Court rendered following the acceptance of a jury verdict of guilty of murder in the first degree and, on a recommendation by the jury, setting the penalty at death.

While this case was on appeal to this court, the United States Supreme Court announced its decisions in *Furman* v. *Georgia,* 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346, *State* v. *Davis,* 408 U.S. 935, 92 S. Ct. 2856, 33 L. Ed. 2d 750, and *State* v. *Delgado,* 408 U.S. 940, 92 S. Ct. 2879, 33 L. Ed. 2d 764. As the defendant in this case was sentenced under § 53-10 of the General Statutes, which, under the holding of those cases, allowed unconstitutionally broad discretion in determining whether the death sentence should be imposed, the case must be remanded for the limited purpose of resentencing the defendant to a term of life imprisonment. See the orders of this court in *State* v. *Delgado,* 163 Conn. 651, 297 A.2d 75, *State* v. *Davis,* 163 Conn. 642, 316 A.2d 512. The defendant's assignment of error concerning the imposition of the death penalty does not require further discussion.

The defendant claims as error the trial court's denial of his motion to set aside the verdict as contrary to the law and the evidence. In his brief the defendant has narrowed this assignment of error to two claims: that the evidence was insufficient to prove murder committed in the perpetration of a robbery, and that the evidence "indicates" that the defendant was not of sane mind when the victim was killed. We test these claims by the evidence as printed in the appendices to the briefs. *State* v. *Cari,* 163 Conn. 174, 176, 303 A.2d 7; *State* v. *Savage,* 161 Conn. 445, 451, 290 A.2d 221; *State* v. *Mortoro,* 157 Conn. 392, 393, 254 A.2d 574.

The jury could have found from the evidence presented to them that on January 7, 1970, the defendant went to the home of Carol Diack in the town of Wilton, asked to use her telephone, threatened her with a "long handled knife" and told her he wanted her car keys and all her money. When Mrs. Diack started to scream, the defendant choked her until she died. He then left with her money.

The trial court properly charged the jury on the issue of felony murder since it was the claim of the state that the murder was committed in the perpetration of the felony of robbery. The court properly explained the elements of robbery including the necessity of proof by the state that the accused had a specific intent permanently to deprive the victim of property. See *State* v. *Vars,* 154 Conn. 255, 259, 224 A.2d 744; *State* v. *Reid,* 154 Conn. 37, 39, 221 A.2d 258. The defendant claims that no evidence was introduced to show the existence of that specific intent.

Intent may be, and usually is, inferred from conduct. *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447; *State* v. *Pallanck,* 146 Conn. 527, 531, 152 A.2d 633. " 'A question of intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be reached.' *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 543, 102 A.2d 366. Intention is a mental process, and of necessity it must be proved by the statement or acts of the person whose act is being scrutinized. *State* v. *Mazzadra,* 141 Conn. 731, 735, 109 A.2d 873. 'A person's intention in any regard is to be inferred from his conduct'; *Kiernan* v. *Borst,* 144 Conn. 1, 6, 126 A.2d 569; and ordinarily can be proven only by circumstantial evidence. *State* v. *Sul,* 146 Conn. 78,

87, 147 A.2d 686." *State* v. *Vars,* supra, 263. From the evidence that the defendant threatened his victim with a knife, told her that he wanted the keys to her car and all the money in the house, strangled her when she screamed and thereafter searched the home for the keys to her car and took her purse, the jury could reasonably and logically infer that the defendant had the specific intent to deprive his victim of her property and that the murder was committed in the perpetration of a robbery.

The defendant further claims that the evidence indicates that he was not of sane mind at the time of the killing of Mrs. Diack. In essence, the defendant claims that his expert witnesses, rather than the state's, should have been believed. The short answer is that the credibility of expert witnesses is a matter to be determined by the trier of fact. *Whewell* v. *Ives,* 155 Conn. 602, 607, 236 A.2d 92. The state introduced the testimony of three fellow workers of the defendant and the expert testimony of the superintendents of two large state mental hospitals on the issue of the defendant's sanity. From this evidence the jury could reasonably and logically find that there was no merit to the claim of the defendant that he was not sane at the time of the killing.

The defendant alleges that a defect in the indictment as returned by the grand jury resulted in several errors, to wit, the denial of his motion to quash the indictment on the grounds of vagueness and ambiguity, the charge to the trial jury, in that it failed to include every phase of the indictment, and a claimed discrepancy in the charges to the grand jury and the trial jury.

The indictment consisted of one count, accusing the defendant of murder committed "wilfully, deliberately, with premeditation and malice aforethought

*and* while in the perpetration of a robbery." (Emphasis supplied.) The gravamen of the defendant's claim is that the indictment was duplicitous in that it charged in the conjunctive two different ways of committing murder, and that, if the indictment is valid, the trial court had no power impliedly to amend the indictment by charging the trial jury only on felony murder.

A substantially similar claim was advanced by the defendant and rejected by this court in the recent case of *State* v. *Edwards,* 163 Conn. 527, 316 A.2d 387. In fairness to counsel in the present case, we note that his brief was filed before the opinion in that case was released. As we indicated in the *Edwards* case, an indictment which charges the crime of murder in the first degree and that the murder was willful, deliberate and premeditated and committed while in the perpetration of a robbery does not charge two distinct and separate offenses in one count. As we said in that case (p. 532): "Committing a single murder in one or all of the ways enumerated constitutes no more than a single offense of murder in the first degree. To say that one may commit a particular crime in any of several ways is certainly not to say that he has committed several crimes. . . . [p. 533] Killing willfully, deliberately and with premeditation, and killing in the perpetration of a robbery, are among the ways of committing murder which were designated first-degree murder and subject to more stringent punishment than other methods. There is, therefore, no basis to the defendant's claim that he was indicted for two distinct and separate offenses in one count. He was indicted only for the single offense of first-degree murder. . . . The indictment clearly stated that the defendant was charged with

first-degree murder. It thus complied with the requirements of § 493 of the Practice Book in that it charged only one crime and stated conjunctively the two ways in which it was committed, i.e., willfully, deliberately and with premeditation; and in the perpetration of a robbery."

The language of an indictment serves two primary purposes: it informs the accused of the nature of the crime charged and it acts as a bar to future criminal proceedings on the same cause. These functions dictate the retention of some limitations. Disjunctive charges, for example, are disfavored because they fail to apprise an accused of an exact crime; he, therefore, may not be able to prepare an adequate defense. If one is accused of committing crime X, or crime Y, or crime Z, he understandably may be left in a quandary. *Grasso* v. *Frattolillo,* 111 Conn. 209, 212–13, 149 A. 838; *State* v. *Miglin,* 101 Conn. 8, 10–11, 125 A. 250. Correspondingly, a trial court may not amend an indictment substantively to include acts not contemplated in the original indictment. *Stirone* v. *United States,* 361 U.S. 212, 215–16, 80 S. Ct. 270, 4 L. Ed. 2d 252; *Ex parte Bain,* 121 U.S. 1, 7 S. Ct. 781, 30 L. Ed. 849. In the absence of this rule, a defendant could be convicted of a crime of which he was not accused.

In the present case, none of the dangers inherent in the use of such forms of indictment exist. "[A]n indictment . . . is not duplicitous for alleging several different means or methods of committing the offense, provided there is no material repugnancy or inconsistency in the means or methods used, as where there is doubt as to which means or method was used in committing the offense, or which produced the result upon which the criminal charge is based." 41 Am. Jur. 2d 1013–14, Indict-

ments and Informations, § 218. The defendant was fully apprised of the specfic crime with which he was charged and he can hardly claim that the state is not barred from another prosecution on the abandoned charge of premeditated murder. If the defendant indeed was uncertain as to the charge, his proper recourse was to a bill of particulars. Practice Book § 495.

We also find no merit to the defendant's assertion that the court committed error in not charging the jury that because of the language of the indictment the defendant could not be found guilty unless they found that the state had proved a murder committed both willfully, deliberately and with premeditation and also in the perpetration of a robbery. Since the evidence presented at the trial would not support a finding of premeditated murder while it would support a finding of felony murder, the court properly confined its charge to the elements of felony murder, committed in the perpetration of a robbery. It is the duty of the court to submit to the jury only those issues which are relevant not only to the pleadings but also to the facts in evidence and to submit to the jury no issue foreign to the facts in evidence. *Panaroni* v. *Johnson,* 158 Conn. 92, 110, 256 A.2d 246; *State* v. *Magoon,* 156 Conn. 328, 339, 240 A.2d 853; *Intelisano* v. *Greenwell,* 155 Conn. 436, 443, 232 A.2d 490; *Clements* v. *Goodkofsky,* 153 Conn. 125, 127, 214 A.2d 680. Where, as here, one crime is charged to have been committed in two ways a defendant cannot be harmed if the jury is instructed to consider only whether the offense was committed in one of the two ways alleged.

The final assignment of error which the defendant has pressed concerns the admission into evidence of a confession signed by him and obtained by F.B.I.

agents on the day he was apprehended in the city of New Orleans. In the absence of the jury, the court held a hearing on the admissibility of the confession and thereafter admitted it in evidence. It concluded that the defendant was adequately informed of his constitutional rights as prescribed by *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, that no promises or threats were made to him and no pressure or coercion of any kind was used against him and he knowingly, intelligently and unconditionally waived his constitutional rights and made the confession freely and voluntarily. These findings were amply supported by the evidence and we find no error in this ruling of the court.

The only error was in the imposition of the death penalty and for the reasons hereinbefore stated the case must be remanded to the Superior Court with direction to impose a sentence of life imprisonment in the Connecticut Correctional Institution at Somers.

In this opinion the other judges concurred.