## STATE OF CONNECTICUT *v.* ISAAC C. JACKSON
## (5630)

BORDEN, STOUGHTON and FOTI, Js.

Argued November 3, 1987—decision released January 19, 1988

*Carol R. Goldberg,* assistant public defender, for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, were *Gary W. Nicholson,* assistant state's attorney, and *Brian F. Kennedy,* legal intern, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of unlawful possession of cocaine with intent to sell or dispense in violation of General Statutes § 21a-277 (a), and knowingly having a revolver in a motor vehicle occupied by him in violation of General Statutes § 29-38. He claims that the trial court erred (1) in its instructions to the jury regarding the requirement that he possess the cocaine with knowledge of its character, (2) by instructing the jury that the number of glassine bags of cocaine possessed by the defendant was a large quantity, (3) by failing to instruct the jury that it was required to reach unanimity on the separate issues of whether the defendant possessed the cocaine (a) with intent to sell it or (b) with intent to dispense it, (4) by refusing to take judicial notice of a climatological report, and (5) by refusing to exclude from evidence certain portions of a toxicological report admitted into evidence.[1] We find no reversible error.

The jury could reasonably have found the following facts: Officer David Santos of the Bridgeport police department was in his police car, and was following a particular car in response to an earlier police broadcast that shots had been discharged from that car. The defendant was a front seat passenger in the car. Santos activated his siren and lights to stop the car. As the car pulled onto the shoulder of the road, the defendant leaned out of the passenger side window and threw out a revolver and a gym bag containing a jacket. Inside a pocket of the jacket were thirteen glassine bags containing cocaine.[2]

---

[1] At oral argument in this court, the defendant withdrew two other claims of error. Those claims attacked the validity of an investigatory stop of the defendant by the police, and the sufficiency of the evidence for the defendant's convictions. We therefore do not consider those claims.

[2] The car was taken to the Bridgeport police station, where an inventory search of it yielded, inter alia, a plastic bag containing marihuana and a brass pipe bowl containing marihuana residue. On the basis of that evi-

I

A

The defendant's first claim challenges both his conviction of possession of cocaine with intent to sell or dispense[3] and his conviction of knowingly having a revolver in a motor vehicle occupied by him.[4] He argues that the court improperly instructed the jury regarding the meaning of the terms "knowledge" and "knowingly."

With respect to the offense of possession of cocaine with intent to sell or dispense, the court charged that one element of the state's case was that the defendant "knowingly possess[ed] the [cocaine]." It then explained that element as follows: "Now, the first element of this offense is knowingly possesses a controlled substance which is a narcotic substance. An act is done knowingly if done voluntarily and purposely. Knowledge may be inferred from possession. In other words, if you find possession proved beyond a reasonable doubt, you can logically and reasonably infer that the defendant had knowledge that he possessed the subject item. Knowledge can also be inferred from all the facts, circumstances and evidence in a case. Possession as used in criminal statutes ordinarily signifies intentional control of a designated thing accompanied by a knowledge of its character." The defendant excepted to this instruction.

dence, the defendant was also charged with possession of drug paraphernalia in violation of General Statutes § 21a-267 (a). He was acquitted of that charge.

[3] General Statutes § 21a-277 (a) provides in pertinent part: "Any person who . . . possesses with the intent to sell or dispense . . . [cocaine] except as authorized in this chapter," shall be imprisoned or fined, or both.

[4] General Statutes § 29-38 provides in pertinent part: "Any person who knowingly has, in any vehicle . . . occupied by him, any weapon for which a proper permit has not been issued" shall be imprisoned or fined, or both. Section 29-38 further provides: "The word 'weapon' as used in this section means any . . . revolver . . . ."

The defendant first claims that the court's instruction was erroneous because it improperly intermingled the elements of knowledge and possession, and thus misled the jury. We disagree.

The defendant's argument misperceives the nature of the concept of illegal possession. Our cases make clear that knowledge and possession are not, as the defendant argues, "mutually exclusive" elements of the offense; rather, knowledge is an essential part of the concept of illegal possession.

" 'In order to prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it.' " *State* v. *Vilalastra,* 9 Conn. App. 667, 673, 521 A.2d 170 (1987), quoting *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985); see D. Borden & L. Orland, Connecticut Criminal Jury Instructions § 15.2. Possession " ' "as used in criminal statutes, ordinarily signifies an intentional control of a designated thing accompanied by a knowledge of its character." ' " *State* v. *Avila,* 166 Conn. 569, 573, 353 A.2d 776 (1974). "The essence of exercising control [over a substance] is not the manifestation of an act of control but instead it is the act of being in a position of control coupled with the requisite mental intent. In our criminal statutes involving possession, this control must be exercised intentionally and with knowledge of the character of the controlled object." *State* v. *Hill,* 201 Conn. 505, 516, 518 A.2d 388 (1986).

We also reject the defendant's suggestion that the defendant's knowledge could not be inferred from his physical possession of the substance. State of mind may be inferred from conduct. See *State* v. *Parent,* 8 Conn. App. 469, 474, 513 A.2d 725 (1986). Just as a jury may infer that a defendant intended to do what he in fact

did; id.; so may it infer that a defendant who is in fact in physical possession of a substance knows the character of the substance and knows of its presence. This is not, of course, a mandatory inference, but it is a permissive inference, depending upon all the facts and circumstances. See id., supra, 473–74 (mere acceptance of package is insufficient basis for an inference of knowledge of its contents).

The defendant's second attack on the charge is also without merit. The defendant complains that the court defined the term "knowingly" in terms of voluntariness and purposefulness, rather than awareness. It is true that "knowingly" ordinarily means "with awareness"; Webster, Third New International Dictionary; and that "knows" means "to have cognizance, consciousness, or awareness." Id.; see also General Statutes § 53a-3 (12) (person acts "knowingly" with respect to a circumstance when he is aware that such circumstance exists).

In this case, however, the court's definition of "knowingly" as meaning "voluntarily and purposely" imposed a higher burden on the state than was required. If one acts voluntarily and purposefully with respect to a circumstance, that state of mind necessarily implies an awareness of the circumstance. The court's charge, therefore, was more advantageous to the defendant than the law required. He cannot take advantage of an error, if any, in his favor. *State* v. *Nicoletti,* 8 Conn. App. 351, 354, 512 A.2d 235 (1986).

## B

The defendant also claims that the court erred by instructing the jury that the number of glassine bags possessed by the defendant was in fact a "large quantity" which would support an inference that the defendant had the intent to sell or dispense. We disagree.

The defendant does not dispute the proposition that possession of a large quantity of narcotics supports an inference of an intent to sell. See *State* v. *Parent,* supra, 474–75. He claims that the court instructed the jury that the thirteen bags of cocaine constituted a large quantity, and thus took that factual issue from the jury. The defendant's argument simply misreads the charge as given.

In the course of instructing the jury on the issue of whether the defendant had the requisite intent, the court told the jury that it could consider the amount of money that he had, the quantity of the drugs seized, the evidence or lack of evidence indicating that he possessed the drugs for his own use, and his conduct at the time of the seizure. The court also stated that the jury could consider the way in which the bags were packaged. It then stated: "You may also consider . . . that the possession of a large quantity of narcotics may support the conclusion that the defendant possessed the narcotics with an intent to sell or dispense."

The court did not instruct the jury that the number of glassine bags of cocaine was in fact a large quantity. That issue was left to the jury's determination. Reading the charge fairly and as a whole; *State* v. *Taxiltaridis,* 2 Conn. App. 617, 620, 481 A.2d 98 (1984); we conclude that the court properly instructed the jury that possession of a large quantity of drugs may support an inference of an intent to sell.[5]

---

[5] With respect to this claim of error, the defendant does not differentiate between the intent to sell and the intent to dispense. In the trial court and in this court neither the state nor the defendant recognized that the statutory definitions of "sale" and "dispense" are quite different. See part I, C, infra. Nor did they alert the trial court to that difference. Our conclusion here that the court did not err does not, however, imply approval of the court's definition of "dispense."

## C

The defendant next claims that the court's charge deprived him of his constitutional right to a unanimous jury verdict, because it did not specifically instruct the jury that its unanimity must extend to the separate questions of whether the defendant intended to sell the cocaine or intended to dispense the cocaine. Despite the defendant's failure to raise this claim in the trial court, it is reviewable under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). *State* v. *Benite,* 6 Conn. App. 667, 670–71, 507 A.2d 478 (1986).

The specific unanimity charge which the defendant seeks to impose here is not always required. "Rather, such a charge is required only where a trial court charges a jury that the commission of any one of several alternative actions would subject a defendant to criminal liability, *and the actions are conceptually distinct from each other,* and the state has presented some evidence supporting each alternative." (Emphasis added.) *State* v. *Benite,* 674–75.

It is true that the statutory concepts of the sale of narcotics and of the dispensing of narcotics are conceptually distinct. " 'Sale' is *any form of delivery* which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee . . . ." (Emphasis added.) General Statutes § 21a-240 (50). "The concept of a sale of an illicit drug is not confined to an exchange for value," but includes "any form of delivery." *State* v. *Parent,* supra, 474.[6]

---

[6] The trial court defined "sale" for the jury as follows: "We have been talking about intent to sell and *the sale is any form of delivery* usually involving the payment of money, but may include barter, exchange or offer therefor—*in other words, it is not necessary to find that the defendant received money or that he had an expectation of profit in any transaction. It's sufficient if he possesses the drugs for purposes of any form, delivery, barter or exchange.* In short, you must not only find possession of the drugs

Dispensing of an illicit drug, on the other hand, involves a much more specific concept. " 'Dispense' means to deliver a controlled substance *to an ultimate user or research subject by or pursuant to the lawful order of a practitioner,* including the prescribing, administering, packaging, labeling or compounding necessary to prepare the substance for the delivery . . . ." (Emphasis added.) General Statutes § 21a-240 (13). A "practitioner" is defined, in general terms, as a health professional, scientific investigator, pharmacy, hospital or other institution licensed or otherwise permitted to distribute or conduct research with respect to controlled substances "in the course of professional practice or research in this state." General Statutes § 21a-240 (43). It is clear from these definitions, therefore, that the concept of dispensing, and thus the concept of possession with intent to dispense, only applies where a practitioner, as defined by § 21a-240 (43), delivers or authorizes delivery to a user or research subject. See also *Commonwealth* v. *Perry,* 391 Mass. 808, 464 N.E.2d 389 (1984); *Commonwealth* v. *Comins,* 371 Mass. 222, 356 N.E.2d 241 (1976), cert. denied, 430 U.S. 946, 97 S. Ct. 1582, 51 L. Ed. 2d 793 (1977); *People* v. *Alford,* 73 Mich. App. 604, 251 N.W.2d 314 (1977), aff'd, 405 Mich. 570, 275 N.W.2d 484 (1979).

Thus, an examination of the statutory definitions of "sale" and "dispense" would ordinarily require a conclusion that they are conceptually distinct from each other, and that, therefore, a specific unanimity charge on each of them would be required under *State* v. *Benite,* supra. In this case, however, the trial court

but intention on the part of the defendant to deliver the drugs or some portion of them to another at some point in time for a valuable consideration." (Emphasis added.)

Although at the end of the definition the court added the "valuable consideration" language, which is not a requirement for a "sale"; see *State* v. *Parent,* 8 Conn. App. 469, 474, 513 A.2d 725 (1986); reading the definition fairly and as a whole we conclude that the court's definition of "sale" as given to the jury was consistent with the statutory definition.

defined "dispense" for the jury in such a way as to eliminate the conceptual difference between the two.

In its instructions to the jury, the trial court defined "dispense" as follows: "Now, dispense is defined as a delivery of a controlled substance to an ultimate user . . . If you find . . . proven beyond a reasonable doubt intent on the part of [the] defendant to dispense—that is to deliver a controlled substance to an ultimate user other than himself, then the element of the crime would have been established." The trial court thus truncated the statutory definition of "dispense" by eliminating that aspect of the definition which required that the delivery be "by or pursuant to the lawful order of a practitioner . . . ." General Statutes § 21a-240 (13).

This definition of "dispense" *as given to the jury* was not conceptually distinct from the statutory definition of "sale." Both "dispense," as defined by the court for the jury, and "sale" as defined by the statute and as defined by the court for the jury, essentially meant delivery to another person.[7] We conclude, therefore, that under the peculiar circumstances of this case the trial court did not err in failing to instruct the jury that its unanimity must extend specifically to the separate questions of whether the defendant intended to sell or to dispense. *State* v. *Benite,* supra.

We point out that the difference between the statutory definitions of "sale" and "dispense," which we have identified, was not raised by the defendant or the state, either in the trial court or in this court. The case was tried in the trial court and argued in this court on the theory that "sale" and "dispense" were interchangeable concepts, and the trial court charged the jury consistently with that theory.

[7] It is true that "dispense" as defined by the court required that the delivery be to an "ultimate user," an aspect not involved in the statutory definition of "sale." Under the facts of this case, however, we do not regard that aspect of the definition of "dispense" as rendering it conceptually different from the concept of "sale."

Although we have noted the error of the court in its definition of "dispense" in order to avoid the appearance of our approval of a plainly erroneous instruction, it is clear that this error was harmless to the defendant. By virtue of the court's definitions of "sale" and "dispense," the jury was presented essentially with the issue of whether the defendant possessed cocaine with the intent to deliver it to a person other than himself. Thus, to the extent that the court erroneously defined "dispense," its error operated only to make "dispense" mean essentially no more than "sale." Under the facts of this case, it is neither reasonably probable nor possible that the jury was misled by the charge, and the error was harmless to the defendant. *State* v. *Shaw,* 12 Conn. App. 294, 303, 530 A.2d 653 (1987).

## II

The defendant's final two claims require little discussion. We have fully reviewed them and find them to be without merit. The court did not abuse its discretion in declining to take judicial notice of the facts contained in a climatological chart published by the National Oceanic and Atmospheric Administration of the United States Department of Commerce. *State* v. *Tomanelli,* 153 Conn. 365, 368–69, 216 A.2d 625 (1966); *De Luca* v. *Park Commissioners,* 94 Conn. 7, 10, 107 A. 611 (1919); see also C. Tait & J. LaPlante, Connecticut Evidence (1976) §§ 6.1, 6.2; B. Holden & J. Daly, Connecticut Evidence (1966) § 22. Nor did the court err in declining to redact certain portions of the toxicological report. The court was well within its discretion in determining that the challenged portions were relevant, and that their probative value outweighed their prejudicial effect. Moreover, the challenged portions related primarily to the charge of possession of drug paraphernalia, of which the defendant was acquitted.

There is no error.

In this opinion the other judges concurred.